Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to receive further evidence or rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence AFFIRMS in part and MODIFIES in part the Opinion and Award of the deputy commissioner as follows:
The Full Commission finds as fact and concludes as matters of law the following which were agreed upon by the parties at the hearing before the deputy commissioner and in a Pre-trial Agreement dated 16 February 1994 as
STIPULATIONS
The parties are subject to and bound by the North Carolina Workers' Compensation Act.
An employer/employee relationship existed between plaintiff and defendant-employer.
Liberty Mutual Insurance Company came on the risk in January 1979 and was the workers' compensation carrier for defendant-employer until July 31, 1988.
American Motorists Insurance Company came on the risk on 1 August 1988 and was the workers' compensation carrier for defendant-employer through 12 July 1991, plaintiff's last day of employment with defendant-employer.
Plaintiff received short-term disability benefits from 22 May 1991 to 16 June 1991 and again from 24 July 1991 through 1 November 1991 for a total amount of $2,550.16. Plaintiff did not contribute to the premium for said benefits.
Plaintiff worked from May 1989 to 12 July 1991 in the weaving department.
Plaintiff has not worked or sought employment since 17 July 1991.
Documents regarding plaintiff from the following medical providers are stipulated into evidence:
Dr. Richard J. Schneider;
Dr. T. Reginald Harris.
* * * * * * * * * * * *
The Full Commission adopts in part and modifies in part the findings of fact by the deputy commissioner and finds as follows:
FINDINGS OF FACT
Plaintiff worked for defendant-employer from 1973 to 1978 and from August 1983 through July 1991 in the cut-and-fold department, dying department and weaving department. Plaintiff worked in the cut-and-fold department from 1983 through April of 1989 and then in the weave room from May 1989 through July of 1991. Plaintiff last worked for defendant-employer on 12 July 1991 and since that time has not returned to gainful employment. Plaintiff continues to complain of chest pain and breathing difficulties and remains on medication and portable breathing equipment for treatment of her pulmonary condition.
After May of 1989, plaintiff spent most of her typical work day in the weave room but would venture into the canteen area, rest room and break room during her ten minute morning and afternoon breaks, twenty minute lunch break and the ten minute period before the work shift started. The weave room was under positive air pressure which permitted air to flow from the weave room to the rest of the plant but with no reverse flow or air or other irritants from the rest of the plant into the weave room.
David Bolda, a certified industrial hygienist, performed an air monitoring survey for various chemical contaminants in defendant-employer's plant. Mr. Bolda identified the presence of isocyanates in two chemicals used in the plant, QZ-517 and N-75. Mr. Bolda testified that there may have a trace presence of TDI within the plant but he was not able to testify whether plaintiff herself would have been exposed to these isocyanates or any other chemicals while working for defendant-employer.
Mark Hunt, an industrial hygienist with Environmental Investigations, reviewed the air quality studies performed by David Bolda to ascertain whether there was any isocyanate chemical exposure in defendant-employer's plant. According to Mr. Hunt, the dispersion of any chemicals would be a function of the air currents in the plant which in turn depended upon the specific ventilation systems present in the plant, the size of the facility, and areas of positive air pressure versus negative air pressure. Mr. Hunt did not know the specific types of air exchange system or exhaust system utilized in the plant nor did he know where any chemicals were used in relation to plaintiff's work station in the weaving department.
Mr. Bolda testified that he could not, to any degree of certainty, state what chemicals plaintiff may have been exposed to at defendant-employer plant, her level of exposure, or the extent of her exposure.
Plaintiff had suffered from asthma as a child which reportedly disappeared at age nine, and plaintiff reported no further respiratory problems or breathing difficulties until 1988 when she contracted pneumonia. She began experiencing periods of intermittent coughing and shortness of breath between 1988 and May 1991 when her asthma symptoms increased.
Plaintiff first sought treatment from Dr. Inaam Schneider on 31 August 1990 complaining of shortness of breath and chest soreness. Dr. Schneider diagnosed acute bronchospasm due to bronchitis. Dr. Schneider continued to treat plaintiff into 1991 for the bronchitis condition and referred plaintiff to Dr. John Dew, a pulmonary specialist in Hickory, North Carolina. Dr. Dew examined plaintiff on 23 July 1991 and noted plaintiff's childhood history of asthma as well as a strong family history of asthma. Plaintiff was next referred to Dr. Victor Tapson, a pulmonary specialist at Duke University Medical Center.
Dr. Tapson examined plaintiff on 30 August 1991 at which time she presented her childhood history of asthma and her history of breathing and respiratory problems since January 1988. She informed Dr. Tapson of her work in the weaving department and reported breathing difficulties while working in this area and while walking to her area and the surrounding plant area. Dr. Tapson diagnosed asthma and believed, based on plaintiff's description of the environment in the weaving department and surrounding plant, that the asthma was exacerbated by her condition.
On or about 5 April 1992 Dr. Schneider referred plaintiff to Dr. Joseph Inglefield, an allergy specialist, for further treatment. Dr. Inglefield diagnosed allergic rhinitis, chronic sinus and extrinsic asthma, and he prescribed allergy and asthma medication for these conditions.
Dr. Robert Rostand, a panel physician for the North Carolina Industrial Commission, examined plaintiff on 3 August 1992 in regards to her alleged occupational lung disease. Plaintiff reported to Dr. Rostand that she had no respiratory problems until approximately 1987 and that she began having additional respiratory problems when she moved to the weaving department. Plaintiff stated she was able to smell chemical fumes drifting in from other departments in the plant. She believed these chemicals to include Toluene and Toluene derivatives, Trichloroethane, Xylene, acetates and a variety of isocyanates. Based on this history, Dr. Rostand believed that plaintiff had occupational asthma due to isocyanate exposure despite her prior personal and family history of asthma.
Dr. Schneider testified that based upon plaintiff's history and her subjective description of chemical exposure while working for defendant-employer, plaintiff's asthma and pulmonary problems may have been caused or aggravated by her work for defendant-employer. Dr. Schneider assumed that plaintiff was exposed to chemicals throughout the day. The evidence shows that the positive air pressure in the weave room and the absence of air migration from the rest of the plant into the weave room would allow little or no exposure to any chemicals while plaintiff was working in the weaving department so Dr. Schneider's opinion were based on faulty assumptions.
The opinions of Dr. Tapson do not establish the necessary causal relationship between the development and aggravation of plaintiff's asthma and pulmonary condition and her employment. Dr. Tapson testified, based upon plaintiff's subjective description of her job site, that there was significant chemical exposure which appeared to exacerbate her pulmonary condition. However, the greater weight of evidence shows that plaintiff received little or no exposure to isocyanates or Toluene while working in the weaving department and therefore any conclusions rendered by Dr. Tapson establishing a causal relationship between plaintiff's asthma and pulmonary condition and her employment are not competent. Similarly, Dr. Dew could not provide any testimony indicating that plaintiff's asthma and pulmonary condition was either caused by her employment or that the employment significantly contributed to the development of her asthma.
Dr. Inglefield also assumed that plaintiff was exposed to isocyanates at defendant-employer's plant and testified that plaintiff's work-related chemical exposure was the cause of and significant contributing factor to the development of her asthmatic problems and resulting disability. Dr. Inglefield testified that these opinions would change if there was no evidence of chemical exposure in plaintiff's work area. Dr. Inglefield then testified that plaintiff's asthma and pulmonary problems could have been caused by allergens unrelated to her employment.
Dr. Rostand also testified that if plaintiff was not exposed to chemicals in the work place, her asthma and pulmonary condition were probably not related to her employment with defendant-employer. Furthermore, plaintiff's childhood history of asthma made her predisposed to acute respiratory infections which could have triggered her asthma symptoms beginning in 1988.
Based upon the testimony of industrial hygienists David Bolda and Mark Hunt defendant-employer's plant only had trace amounts of a single isocyanate in one area of the plaintiff where plaintiff may have had an opportunity for exposure. The greater weight of the evidence also failed to establish the presence of more than minimal amounts of isocyanates or Toluene in the weave room, cut-and-fold department, or in the surrounding areas of the plant where plaintiff may have been potentially exposed. Mr. Bolda was requested by defendant-employer to conduct an air monitoring survey for various chemical contaminants on 3 August 1990 because a number of employees, including the plaintiff were experiencing respiratory problems at the plant. Five employees experienced severe respiratory problems.
Plaintiff had reasonable grounds to pursue her claim for chemical exposure during the time period she was employed in the cut-and-fold department in that her symptoms developed during this period and expert medical opinions rendered in this case tended to establish a prima facie causal nexus between plaintiff's employment and her condition.
* * * * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
Plaintiff has failed to carry her burden of proving by the greater weight of the competent and credible evidence that either her employment in the cut-and-fold department while defendant Liberty Mutual Insurance Company was the carrier on the risk or in the weaving department while defendant American Motorist Insurance Company was the carrier on the risk, exposed her to isocyanates or other chemicals which could have caused or significantly contributed to the development of her disabling conditions. Rutledge v. Tultex Corp., 308 N.C. 85, 301 S.E.2d 359 (1983). Plaintiff has failed to carry her burden of proving by the greater weight of competent and credible medical evidence that her employment in either the cut-and-fold department or the weaving department placed her at an increased risk as compared to members of the public generally of developing and/or aggravating her underlying asthma and pulmonary condition. N.C. Gen. Stat. § 97-53(13). There is no evidence of chemical exposure while plaintiff was working in the cut-and-fold department during the periods of time which defendant Liberty Mutual Insurance Company was the carrier on the risk and likewise there is no evidence of chemical exposure while plaintiff was working in the weaving department while defendant American Motorist Insurance Company was the carrier on the risk. The opportunity for chemical exposure in both departments would have been minimal. Therefore, there is no evidence of a causal relationship between the development and/or aggravation of plaintiff's asthma and pulmonary condition beginning in 1988 and her total incapacity for work for which she seeks compensation.Wilkins v. J.P. Stevens Company, 333 N.C. 449, 426 S.E.2d 675
(1993).
On 28 October 1994, Liberty Mutual Insurance Company filed a Motion for Award of Attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1. Plaintiff had reasonable grounds to pursue her claim for chemical exposure during the time period she was employed in the cut-and-fold department in that her symptoms developed during this period and expert medical opinions rendered in this case tended to establish a prima facie causal nexus between plaintiff's employment and her condition. Liberty Mutual Insurance Company's Motion for Attorney's fees should be denied.
* * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
ORDER
Plaintiff's claim for medical treatment and compensation under the North Carolina Workers' Compensation Act is hereby DENIED.
The Award of attorney's fees to Liberty Mutual Insurance Company by the deputy commissioner is VACATED. Liberty Mutual Insurance Company's Motion for Award of Attorney's Fees pursuant to N.C. Gen. Stat. § 97-88.1 is DENIED.
3. Each side shall pay its own costs.
 S/ __________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ __________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ __________________ COY M. VANCE COMMISSIONER
BSB:be